**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Bilal Chakas,<br><br>Plaintiff,<br><br>v.<br><br>Uber Technologies Inc. and Lyft Inc.,<br><br>Defendants. | Civil No. 3:25-cv-02057-VAB<br><br>August 26, 2026 |

**RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* AND RECOMMENDED RULING ON INITIAL REVIEW OF THE COMPLAINT**

This is a lawsuit by a former rideshare driver, Bilal Chakas, against Uber and Lyft. The two companies apparently deactivated Mr. Chakas from their driver platforms after a customer complained about him.[1] Mr. Chakas alleges that the companies "conducted no reasonable investigation" of the customer's claims, and that they "deprived [him] of fair process" before deactivating him.[2] He therefore filed this lawsuit, alleging the commission of four common-law torts and violations of the laws against "unfair and deceptive business practices."[3] Contemporaneously with his complaint, he filed an application for leave to proceed *in forma pauperis*, or "IFP."[4] The presiding District Judge, the Honorable Victor A. Bolden, referred Mr. Chakas's IFP motion to me, Magistrate Judge Thomas O. Farrish.[5]

---

1 Complaint, Docket No. 1, at para. 2.
2 Complaint, Docket No. 1, at paras. 14, 15.
3 Complaint, Docket No. 1, at paras. 21-32.
4 Application to Proceed *In Forma Pauperis*, Docket No. 2.
5 Order of Referral, Docket No. 9.

Mr. Chakas's IFP motion will be granted. As I will explain in Section II below, plaintiffs are entitled to proceed IFP when they file affidavits showing that they are "unable to pay" the filing fee, and Mr. Chakas has done so.

But "[a] motion to proceed IFP comes with a consequence."[6] "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits,' a law known as 28 U.S.C. § 1915 "instructs the Court to review their complaints and dismiss certain types of . . . facially unmeritorious claims."[7] Judge Bolden accordingly referred Mr. Chakas's case to me not only for the IFP motion, but also to conduct an initial review of the complaint under that law.[8]

I have carefully studied Mr. Chakas's complaint and the relevant legal authorities, and having done so, I recommend that his complaint be dismissed. As explained in Section III, each of Mr. Chakas's five attempted causes of action is "frivolous" and "fails to state a claim on which relief may be granted." But I further recommend that the dismissal be "without prejudice." If my recommendation were to be accepted, that would mean that Mr. Chakas could attempt to fix the defects identified in this recommended ruling with an amended complaint.

## I. BACKGROUND

The following facts are taken from Mr. Chakas's complaint, and they are assumed true for the purposes of this review.[9] If Mr. Chakas ultimately passes this initial review, he would of course

---

6 *Ortiz v. Tinnerello*, No. 22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2026).

7 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022), *report and recommendation adopted*, slip op. (D. Conn. Jan. 31, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

8 Order of Referral, Docket No. 9.

9 *Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2020 WL 6119382, at *1 n.4 (D. Conn Oct. 16, 2020).

bear the burden to prove his factual allegations.[10] But at this early stage, I am only addressing whether his complaint states a sufficient claim to proceed, and I am required to assume the truth of his non-conclusory factual allegations.[11]

Mr. Chakas worked as a rideshare driver for the two defendants, Uber and Lyft.[12] He says that he "consistently maintained excellent ratings and positive rider feedback," and he adds that he "regularly dealt with intoxicated, aggressive, or inappropriate passengers but always maintained safety and professionalism."[13] At some point, he filed a report with the defendants about one such "dangerous or problematic" passenger.[14] The passenger then "retaliate[ed]" with a "false" complaint of his own.[15]

Mr. Chakas alleges that Uber and Lyft both terminated him in response to this complaint, without even contacting him first.[16] He says that terminating him without a "reasonable investigation" "violated [the defendants'] stated policies and deprived [him] of fair process."[17] He adds that he "lost his entire source of income immediately following deactivation," and that he "suffered severe financial consequences including inability to pay bills, eventual bankruptcy, and long-term credit damage."[18]

Mr. Chakas then filed this lawsuit, alleging that Uber and Lyft both committed four torts against him. In Count 1, he asserts a cause of action for "negligent investigation," in which he

---

[10] *Ortiz v. Brown*, No. 3:25-cv-1495 (OAW) (TOF), 2026 WL 2322825, at *1 n.5 (D. Conn. Aug. 11, 2026).
[11] *Ortiz v. Brown*, No. 3:25-cv-1495 (OAW) (TOF), 2026 WL 2322825, at *1 n.5 (D. Conn. Aug. 11, 2026).
[12] Complaint, Docket No. 1, at para. 10.
[13] Complaint, Docket No. 1, at paras. 10-11.
[14] Complaint, Docket No. 1, at para. 12.
[15] Complaint, Docket No. 1, at para. 13.
[16] Complaint, Docket No. 1, at para. 14.
[17] Complaint, Docket No. 1, at paras. 14-15.
[18] Complaint, Docket No. 1, at paras. 16-17.

alleges that both companies violated their "duty to conduct a fair investigation" by "relying on false, unverified allegations."[19] In Count 2, he says that the two companies committed the tort of negligent misrepresentation when they "maintained harmful false information as true."[20] In Count 3, Mr. Chakas asserts a cause of action for "retaliation[;]" he claims that Uber and Lyft wrongfully terminated him in retaliation for his "report[ing] a dangerous rider."[21] In Count 4, he contends that the defendants committed the tort of negligent infliction of emotional distress through their conduct.[22] Fifth and finally, he asserts a claim in Count 5 for "unfair and deceptive business practices," which I interpret as an attempt to plead a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.*[23] He seeks "[l]ost income (past and future)," "[e]motional distress damages," compensation for "[r]eputational harm," "[f]inancial losses relating to bankruptcy," "[p]unitive damages," "[c]osts[,] and other relief the Court deems proper."[24] Shortly after he filed his complaint, the Clerk of the Court randomly assigned his case to Judge Bolden.

As noted above, Mr. Chakas filed an application for leave to proceed IFP contemporaneously with his complaint.[25] Judge Bolden then referred the case to me for a ruling on the IFP application and an initial review of the complaint under 28 U.S.C. § 1915.[26] I have carefully considered both the application and the complaint. In Section II below, I will explain

---

19 Complaint, Docket No. 1, at paras. 21-22.
20 Complaint, Docket No. 1, at para. 24.
21 Complaint, Docket No. 1, at paras. 26-27.
22 Complaint, Docket No. 1, at paras 29-30.
23 Complaint, Docket No. 1, at paras. 31-32.
24 Complaint, Docket No. 1, at Section VI.
25 Application for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
26 Order of Referral, Docket No. 9.

why Mr. Chakas is entitled to IFP status. But in Section III, I will explain why his complaint should not move forward at this time.

## II. *In Forma Pauperis* Application

When a plaintiff files a complaint in federal court, typically he must pay filing and administrative fees totaling $405.00.[27] District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees."[28] When a court allows a plaintiff to proceed this way, he is said to be proceeding "*in forma pauperis*," which is a Latin phrase meaning "in the manner of a pauper" or poor person.[29]

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, but he does need to show that "paying such fees would constitute a serious hardship."[30] The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and his dependents with the necessities of life."[31]

---

27 28 U.S.C. § 1914. The filing fee is $350 and the administrative fee is $55.

28 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson,* 575 U.S. 532, 534 (2015) (plaintiffs who qualify for IFP status "may commence a civil action without prepaying fees or paying certain expenses").

29 *Anderson v. Davis*, No. 3:26-cv-400 (SVN) (TOF), 2026 WL 2268253, at *2 n.23 (D. Conn. Aug. 6, 2026) (quoting Black's Law Dictionary (8th ed.) at p. 794), *report and recommendation adopted*, slip op. (D. Conn. Aug. 24, 2026).

30 *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007); *see also Potnick v. Eastern State Hospital*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) (stating that "no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life").

31 *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In this case, Mr. Chakas clearly qualifies for IFP status. He says that he is unemployed and has less than $100 in cash on hand.[32] He owns no real estate, and his only evident asset is an eleven-year-old Honda Accord that is still financed.[33] Back when he was working, he earned $2,400 per month; but even then, his monthly expenses exceeded his earnings.[34] Because his application establishes that he is "unable to pay" $405.00 in filing and administrative fees, he will be granted leave to proceed IFP.

## III. Review of the Complaint Under 28 U.S.C. § 1915

### A. Applicable Legal Principles

As noted above, however, IFP status "comes with a consequence."[35] The same statute that authorizes courts to grant IFP status to qualifying plaintiffs also directs them to review complaints to ensure that those plaintiffs are not abusing that status. Because IFP plaintiffs lack "an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits," the statute instructs courts to review their complaints and dismiss certain types of obviously unmeritorious claims.[36]

Specifically, 28 U.S.C. § 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply. First, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious."[37] An action is "frivolous" for purposes of Section 1915(e)(2)(B) if it "has no arguable basis in law or fact" or is "based on an indisputably meritless legal theory."[38] Second, the court must dismiss a complaint

---

32 Application for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
33 Application for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
34 Application for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
35 *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).
36 *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).
37 28 U.S.C. § 1915(e)(2)(B)(i).
38 *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (per curiam).

that "fails to state a claim on which relief may be granted."[39] Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief."[40]

The second circumstance is particularly relevant here, so I will discuss it in more detail. To "state a claim on which relief may be granted," the plaintiff's complaint "must include enough factual allegations to add up to a legally meritorious claim, assuming that he could prove them."[41] Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims.[42] Conclusory allegations are insufficient.[43] Put differently, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[44] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs like Mr. Chakas—that is, people who bring lawsuits by themselves, without a lawyer. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe

---

39 28 U.S.C. § 1915(e)(2)(B)(ii).

40 28 U.S.C. § 1915(e)(2)(B)(iii).

41 *Carrier v. DelGrosso*, No. 3:25-cv-1808 (VAB) (TOF), 2025 WL 3458049, at *3 (D. Conn. Dec. 2, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

42 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

43 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A 'conclusory' allegation is one that 'expresses a factual inference without stating the underlying facts on which the inference is based.'" *Reid v. Lokay*, No. 3:25-cv-997 (KAD) (TOF), 2025 WL 3521362, at *3 (D. Conn. Dec. 9, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 5, 2026) (quoting Black's Law Dictionary (8th ed. 2004) at p. 308). For example, "the defendant violated the plaintiff's rights" is a conclusory allegation because it states a legal conclusion—rights were violated—without explaining the facts that support that conclusion, or how those rights were violated.

44 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

45 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 556 (2007)).

*pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel."[46] In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest."[47]

Moreover, because *pro se* litigants "'cannot be expected to know all of the legal theories on which they might ultimately recover,' a reviewing court should not consider itself limited by the labels that the plaintiff has chosen to attach to his causes of action."[48] Courts should "not only consider whether [the plaintiff's] specific claims deserve to proceed under Section 1915(e)(2); [they] should also consider whether [the plaintiff's] non-conclusory factual allegations, if proven, would add up to some meritorious claim that he did not think of."[49]

"Still, even a *pro se* plaintiff must plead a plausible claim."[50] "Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility."[51] And while "courts are obligated to draw the most favorable inferences that a *pro se* plaintiff's complaint supports, they cannot invent factual allegations that he has not pled."[52]

---

46 *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).

47 *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).

48 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022) (quoting *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)).

49 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022).

50 *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

51 *Vega v. University of Connecticut Medical Center*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) (internal citation omitted); *accord McQuay v. Pelkey*, No. 3:16-cv-436 (MPS), 2017 WL 2174403, at *2 (D. Conn. May 17, 2017).

52 *Braswell v. Pelchat*, No. 3:20-cv-1428 (AVC) (TOF), 2021 WL 11580927, at *2 (D. Con. Feb. 12, 2021), *report and recommendation approved*, slip op. (D. Conn. Apr. 6, 2021) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (quotation marks and brackets omitted).

I will now consider whether Mr. Chakas has pled a plausible, non-frivolous claim under these standards. As will be shown, he has not yet done so.

## B. Application of These Principles to Mr. Chakas's Claims

### *1. Count 1: Negligent investigation*

Mr. Chakas first asserts a claim for "negligent investigation."[53] He says that Uber and Lyft "owed [him] a duty to conduct a fair investigation."[54] He then alleges that the two companies "breached this duty by relying on false, unverified allegations" from the "problematic" rider.[55]

These allegations do not add up to a plausible tort claim. "In Connecticut, an employer and an employee have an at-will employment relationship in the absence of a contract to the contrary."[56] "Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability."[57] When employment is "at will," "an employer has no duty to investigate with care prior to terminating" the employee.[58] Of course, an employee may be owed an investigation under an employment contract, if he has one.[59] But Mr. Chakas has not alleged that he had an employment contract with Uber or Lyft, let alone one

---

53 Complaint, Docket No. 1, at paras. 21-23.
54 Complaint, Docket No. 1, at para. 21.
55 Complaint, Docket No. 1, at paras. 12, 22.
56 *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697 (2002). Mr. Chakas evidently contends that he was an employee of, rather than an independent contractor for, Uber and Lyft. (*Cf.* Complaint, Docket No. 1, at para. 10) (alleging that he "worked as a driver for both Uber and Lyft"). Solely for purposes of an initial review under 28 U.S.C. § 1915, I will assume rather than decide that Mr. Chakas had an employment relationship with the two companies. I note, however, that rideshare companies typically object strenuously to this claim. *Cf., e.g., O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133, 1135 (N.D. Cal. 2015). Nothing in this opinion should be construed as a final acceptance by the Court of one position or the other.
57 *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697-98 (2002).
58 *Crosby v. HSBC North American Holdings, Inc.*, No. AAN-CV-06-500378-S, 2008 WL 2930188, at *2 (Conn. Super. Ct. June 30, 2008).
59 *Crosby v. HSBC North American Holdings, Inc.*, No. AAN-CV-06-500378-S, 2008 WL 2930188, at *2 (Conn. Super. Ct. June 30, 2008) (denying motion to strike negligent investigation claim because plaintiff alleged the existence of a written employment contract).

that imposed an obligation to investigate customer complaints before terminating the employee in response to them. This claim should therefore be dismissed.

### *2. Count 2: Negligent misrepresentation*

Mr. Chakas next asserts a claim for negligent misrepresentation.[60] This claim consists of only two sentences totaling thirteen words. He first claims that "Defendants maintained harmful false information as true."[61] He then states that "[he] suffered economic and reputational harm" as a consequence.[62]

To state a plausible non-frivolous claim for negligent misrepresentation, Mr. Chakas must plead facts that, if he were to prove them, would show "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."[63] In this case, Mr. Chakas's complaint fails to plead at least two of these elements. First, he does not allege that Uber or Lyft made any misrepresentation of fact. Even in his telling, it was the *customer* who made false statements; he faults Uber and Lyft not for repeating those statements to a third party, but rather only for believing and acting upon them.[64] Second, he does not claim to have reasonably relied, to his financial detriment, on any misstatement of fact by either of the two companies. Because his factual allegations are missing at least two of the four elements of the tort of negligent misrepresentation, this claim should be dismissed.

---

60 Complaint, Docket No. 1, at paras. 24-25.
61 Complaint, Docket No. 1, at para. 24.
62 Complaint, Docket No. 1, at para. 25.
63 *Nazami v. Patrons Mutual Insurance Co.*, 280 Conn. 619, 626 (2006).
64 Complaint, Docket No. 1, at para. 13.

### *3. Count 3: Retaliation*

Mr. Chakas's third claim is a claim for retaliation. He says that he "reported a dangerous rider," and that both Uber and Lyft "retaliated" against him by "deactivating" him from their rideshare platforms.[65] He adds that he "suffered severe damages" as a result.[66]

A retaliation claim ordinarily "requires a plaintiff to show (1) that he or she participated in a protected activity that was known to the defendant, (2) an employment action that disadvantaged the plaintiff, and (3) a causal relation between the protected activity and the disadvantageous employment action."[67] Assuming without deciding that reporting a "dangerous or problematic" rider is "protected activity," and further assuming without deciding that deactivation is a "disadvantageous employment action," Mr. Chakas has not plausibly alleged the third element. While *pro se* pleadings are given a liberal construction, they cannot be entirely conclusory.[68] Here, Mr. Chakas merely "expresses a factual inference" of retaliatory intent "without stating the underlying facts on which the inference is based.'"[69]

### *4. Count 4: Negligent infliction of emotional distress*

Mr. Chakas next asserts a claim for negligent infliction of emotional distress. His claim consists of two sentences totaling sixteen words.[70] He first writes that the "Defendants' conduct

---

65 Complaint, Docket No. 1, at paras. 26-27.

66 Complaint, Docket No. 1, at para. 28.

67 *Martinez v. Premier Maintenance, Inc.*, 185 Conn. App. 425, 454 (2018).

68 *Jusino v. Gallagher*, No. 3:21-cv-689 (SRU), 2022 WL 2078159, at *6 (D. Conn. June 9, 2022) (dismissing *pro se* prisoner's Eighth Amendment claim under 28 U.S.C. § 1915A because a necessary element of that claim was supported only by "vague and conclusory allegations").

69 *Reid v. Lokay*, No. 3:25-cv-997 (KAD) (TOF), 2025 WL 3521362, at *3 (D. Conn. Dec. 9, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 5, 2026) (quotation marks and brackets omitted).

70 Complaint, Docket No. 1, at paras. 29-30.

created an unreasonable risk of emotional harm."[71] He then alleges that "[he] experienced emotional injury as a result."[72]

In Connecticut, the tort of negligent infliction of emotional distress has four elements. "First, the plaintiff must show that 'the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress.'"[73] "Second, the plaintiff must demonstrate that [his] 'distress was foreseeable.'"[74] "Third, [he] must establish that "the emotional distress was severe enough that it might result in illness or bodily harm."[75] "[F]ourth, [he] must prove that 'the defendant's conduct was the cause of [his] distress.'"[76]

In the employment setting, a negligent infliction of emotional distress claim is available only when it arises out of "unreasonable conduct of the defendant in the termination process."[77] Because many of the ordinary incidents of workplace life—performance evaluations, demotions, denials of advancement, *etc*.—can be inherently distressing, "it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace."[78] When the employer terminates the employee, however, "emotional distress that might result in illness or bodily harm is a foreseeable consequence of particularly egregious conduct involving [the] termination, which

---

71 Complaint, Docket No. 1, at para. 29.
72 Complaint, Docket No. 1, at para. 30.
73 *Mumma v. Pathway Vet Alliance, LLC*, 648 F. Supp. 3d 373, 399 (D. Conn. 2023) (quoting *Carroll v. Allstate Insurance Co.*, 262 Conn. 433, 444 (2003)).
74 *Mumma v. Pathway Vet Alliance, LLC*, 648 F. Supp. 3d 373, 399 (D. Conn. 2023) (quoting *Carroll v. Allstate Insurance Co.*, 262 Conn. 433, 444 (2003)).
75 *Mumma v. Pathway Vet Alliance, LLC*, 648 F. Supp. 3d 373, 399 (D. Conn. 2023) (quoting *Carroll v. Allstate Insurance Co.*, 262 Conn. 433, 444 (2003)).
76 *Mumma v. Pathway Vet Alliance, LLC*, 648 F. Supp. 3d 373, 399 (D. Conn. 2023) (quoting *Carroll v. Allstate Insurance Co.*, 262 Conn. 433, 444 (2003)) (brackets omitted).
77 *Parsons v. United Technologies Corp., Sikorsky Aircraft Division*, 243 Conn. 66, 88 (1997) (citation omitted).
78 *Perodeau v. City of Hartford*, 259 Conn. 729, 757 (2002).

would, in turn, give rise to a duty to avoid such conduct."[79] Accordingly, an employer "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context," but it may be liable for egregious "conduct occurring in the termination of employment."[80]

To plead a plausible claim for negligent infliction of emotional distress arising out of a workplace termination, the plaintiff must plead facts showing that the employer unreasonably insulted, humiliated, or embarrassed him. "The mere termination of employment, even where it is wrongful, is . . . not, by itself, enough to sustain a claim for negligent infliction of emotional distress."[81] "[T]he tort of negligent infliction of emotional distress focuses on the manner of discharge; whether the employer's conduct in the termination was unreasonable, not whether the termination of employment was unreasonable."[82] Thus, "[i]n order to sustain a claim of negligent infliction of emotional distress in this setting," the plaintiff must plead facts creating a plausible inference that his "discharge was done in an inconsiderate, humiliating or embarrassing manner."[83]

To illustrate this principle with examples, one court allowed a negligent infliction of emotional distress claim to proceed when the plaintiff alleged that the terminating employer gratuitously called the police, who then handcuffed him in front of his co-workers.[84] Another court

---

79 *Perodeau v. City of Hartford*, 259 Conn. 729, 755 (2002).

80 *Perodeau v. City of Hartford*, 259 Conn. 729, 762-63 (2002).

81 *Parsons v. United Technologies Corp., Sikorsky Aircraft Division*, 243 Conn. 66, 88-89 (1997).

82 *Mercado v. PRRC, Inc.*, No. 3:15-cv-637 (JBA), 2015 WL 6958012, at *5 (D. Conn. Nov. 10, 2015) (quoting *Martin-Glave v. Aventis Pharmaceuticals*, No. 3:03-cv-1482 (EBB), 2003 WL 23185867, at *5 (D. Conn. Dec. 11, 2003)).

83 *Mercado v. PRRC, Inc.*, No. 3:15-cv-637 (JBA), 2015 WL 6958012, at *5 (D. Conn. Nov. 10, 2015) (quoting *Copeland v. Home & Community Health Services., Inc.*, 285 F. Supp. 2d 144, 152 (D. Conn. 2003)) (internal quotation marks omitted).

84 *Mercado v. PRRC, Inc.*, No. 3:15-cv-637 (JBA), 2015 WL 6958012, at *5-6 (D. Conn. Nov. 10, 2015)

allowed a claim to proceed when the plaintiff alleged that the terminating employer needlessly publicized his firing and falsely accused him of dishonesty.[85] Conversely, a court dismissed a negligent infliction of emotional distress claim when the plaintiff alleged that the employer refused to hear evidence and "mimicked her in an offensive manner;" the court observed that, "[w]hile this alleged conduct is tasteless, insensitive, and highly inappropriate . . . it does not rise to the level of conduct that is sufficiently wrongful that defendant should have realized that it involved an *unreasonable* risk of emotional distress."[86] And another court dismissed a negligent infliction of emotional distress claim when the plaintiff's lone argument was that "the discriminatory termination of employment in violation of federal law constitutes . . . unreasonable conduct."[87]

In this case, Mr. Chakas's complaint contains no allegations of "inconsiderate, humiliating, or embarrassing" termination conduct. In particular, it contains no allegations amounting to the sort of gratuitously insulting or humiliating conduct present in cases like *Mercado* and *Mulkin.* And while the Court must give Mr. Chakas's pleading a liberal construction, it cannot invent facts that he himself has not pled.[88] Because Mr. Chakas has not pled enough facts to amount to a plausible, non-frivolous claim of negligent infliction of emotional distress in the employment termination context, his fourth count should be dismissed.

***5. Count 5: Unfair and deceptive business practices***

Finally, Mr. Chakas asserts a claim in Count 5 for "unfair and deceptive business practices." Like his other claims, Count 5 is sparsely pled; it consists of two sentences totaling

---

85 *Mulkin v. Anixter, Inc.*, No. 3:03-cv-901 (RNC), 2004 WL 288806, at *2-3 (D. Conn. Feb. 10, 2004).

86 *Pecoraro v. New Haven Register*, 344 F. Supp. 2d 840, 847 (D. Conn. 2004) (citing *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345 (1978)).

87 *Schug v. Pyne-Davidson Co.*, No. 3:99-cv-1493 (CFD), 2001 WL 34312877, at *7-8 (D. Conn. Dec. 10, 2001).

88 *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

fifteen words.[89] Mr. Chakas first says that the "Defendants failed to follow fair procedures and engaged in arbitrary deactivation."[90] He then alleges that "[he] suffered significant damages" as a consequence.[91] Although Mr. Chakas did not cite any particular statute, I will interpret his "Count 5" as an attempt to raise a claim under the Connecticut Unfair Trade Practices Act, or "CUTPA."

Connecticut courts have clearly held that "an employer-employee relationship does not give rise to a CUTPA claim."[92] CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[93] "The terms trade and commerce are defined in General Statutes § 42-110a(4) as 'the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value in this state.'"[94] When a plaintiff's complaint arises out of a relationship "not between a consumer and a commercial vendor, but rather between an employer and an employee," and when "[t]here is no allegation in the complaint that the defendant advertised, sold, leased or distributed any services or property to the plaintiff," the "allegations are insufficient to support a CUTPA cause of action."[95] That is the case here, because Mr. Chakas does not allege that Uber or Lyft sold him anything, leased him anything, or advertised anything to him. As it is currently pled, his CUTPA claim should be dismissed.

---

89 Complaint, Docket No. 1, at paras. 31-32.

90 Complaint, Docket No. 1, at para. 31.

91 Complaint, Docket No. 1, at para. 32.

92 *Sempey v. Stamford Hospital*, 194 Conn. App. 505, 518 (2019); *see also Parimal v. Manitex, Inc.*, No. 3:19-cv-1910, 2021 WL 1146918 at *9 (D. Conn. Mar. 25, 2021).

93 Conn. Gen. Stat. § 42-110b.

94 *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 670 (1992) (quoting Conn. Gen. Stat. § 42-110a(4)).

95 *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 670 (1992).

### *6. Other claims*

In summary, each of the five claims that Mr. Chakas has attempted to plead should be dismissed as frivolous and for failure to state a claim. But this does not end the analysis, because in reviewing complaints under 28 U.S.C. § 1915, courts "should also consider whether [the plaintiff's] non-conclusory factual allegations, if proven, would add up to some meritorious claim that he did not think of."[96] In *Emiabata*, for example, the plaintiff attempted six specific claims that were all barred by one sort of immunity or another.[97] But his factual allegations suggested a seventh claim that he had not thought of, and the Court allowed that claim to proceed even though the plaintiff had not expressly pled it.[98]

Following this principle, I have considered whether Mr. Chakas's factual allegations would add up to some meritorious claim, other than the five he has attempted. Because many employment claims are grounded in contract law,[99] I have considered whether Mr. Chakas's factual allegations suggest such a claim; but he has pled nothing about any employment contract. I have considered whether he could state a claim for defamation, but he has not alleged that Uber or Lyft said anything false about him to any third person. I have also considered whether some of his claims would pass initial review if I assumed him to be an independent contractor, rather than assuming the truth of his evident claim to have been an employee; but his complaint says nothing about an independent contractor arrangement and how (if at all) his termination would have violated it.

---

96 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022).

97 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *10 (D. Conn. Jan. 3, 2022), *report and recommendation adopted*, slip op. (D. Conn. Jan. 31, 2022)

98 *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *11 (D. Conn. Jan. 3, 2022), *report and recommendation adopted*, slip op. (D. Conn. Jan. 31, 2022)

99 *Cf. Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697 (2002) (noting that employment relationships in Connecticut are "at will . . . in the absence of a contract to the contrary").

Finally, I have also considered whether his factual allegations would support a claim under the employment discrimination statutes, but Mr. Chakas does not allege facts showing that he was discriminated against on account of his race, religion, sex, or any other protected characteristic.

In considering these possibilities, I have been careful to give the complaint a liberal construction, and to draw every reasonable inference in Mr. Chakas's favor. But I cannot invent facts he did not plead. I cannot, for example, invent an independent contractor contract, or facts supporting a *prima facie* case of discrimination, when Mr. Chakas has not pled them himself. Because Mr. Chakas's non-conclusory factual allegations do not amount to any plausible cause of action, his complaint should not move forward at this time.

## IV. CONCLUSION

In summary, (a) Mr. Chakas's application for leave to proceed *in forma pauperis* is granted, but (b) I recommend that Judge Bolden dismiss all the claims in Mr. Chakas's complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). In using the word "frivolous," I do not mean to suggest that Mr. Chakas's deactivation was not a serious matter. Any time someone loses his sole means of support, that is a serious thing. But "frivolous" is the word that Congress has chosen for claims that have "no arguable basis in law or fact" or are "based on an indisputably meritless legal theory."[100]

I further recommend, however, that the dismissal be without prejudice. If my recommendation were to be accepted, that would mean that Mr. Chakas could attempt to cure the defects in his pleading by filing an amended complaint. There may be no cure for these defects, but *pro se* plaintiffs are usually permitted at least one try.[101]

---

[100] *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (per curiam).

[101] *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

This is a recommended ruling by a magistrate judge.[102] **<u>If Mr. Chakas wishes to object to my recommendation, he must file that objection with the Clerk of the Court by September 14, 2026.</u>**[103] If he fails to file a timely objection, his failure "operates as a waiver of any further judicial review[.]"[104] In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[105]

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge

---

102 Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

103 *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Mr. Chakas, will receive the recommendation from the Clerk of the Court via mail).

104 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

105 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *Impala v. United States Department of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).